### Germann et al. v. Stanley.

Oct. 2, 1945.

C. E. Rankin and Clay & Clay for appellants.

Nelson D. Rodes for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

Appellants, J. M. Germann and M. F. Germann, own and operate three tobacco warehouses in Danville, and conduct their business under the firm name, "Burley Warehouses." Appellee, Raymond C. Stanley, is a licensed "speculator" in leaf tobacco, in contradistinction to a manufacturer of, or dealer in, tobacco. A manufacturer is any person who processes tobacco into a product for consumer use. A dealer is any person, other than a manufacturer, who purchases tobacco from producers or at auction, and redries and packs the tobacco on his own account. A speculator is a person, other than a manufacturer or dealer, who purchases to-

bacco at auction and resells it at auction without substantially. changing its form or condition.

Previous to the adoption of the restrictions imposed upon the purchase and handling of tobacco by the War Food Administration, the great bulk of Burley tobacco was sold at auction on the floors of the many warehouses in the Burley growing district. These sales were conducted by the operators of the various warehouses, acting as agents of the producers, and the operators of the warehouses employed their own auctioneers to cry the sales. The bidding at these sales generally was started by the owner of the warehouse, and from time to time he would continue to participate in the bidding, "to protect the producer," and frequently became the purchaser of tobacco at his own sale. The producer had the right to reject any bid, and the sale was not consummated until he accepted the bid tentatively accepted by the auctioneer. Invariably, the highest and best bidder became the purchaser of the tobacco sold. Upon this country's entrance into World War No. Two, the Office of Price Administration established maximum prices, by grades, at which tobacco may be sold at auction. The tobacco is graded by government inspectors. The War Food Administration placed certain restrictions on the purchase of Burley tobacco, limiting the amount of tobacco that manufacturers and dealers may purchase at auction, and prohibiting any person other than a manufacturer or dealer from purchasing any tobacco at auction, unless he should do so for the purpose of reselling it at auction to a manufacturer or dealer. Since the bidding must stop at the price established by the Office of Price Administration, the auctioneer more frequently than not receives the maximum bid from several buyers. When this occurs, it is the custom of the auctioneer to allocate such portion of the day's sales equitably among those who bid the ceiling price. Appellants adopted a rule prohibiting any person, other than a manufacturer of tobacco, from bidding on the tobacco sold on the floors of their houses. One of the speculators prohibited from participating in the bidding at auction on appellants' floors is the appellee, who brought this suit seeking a mandatory injunction to require appellants to permit him to bid on the tobacco, and to allocate to him his fair proportion of the tobacco for which he shall have tied with others in bidding the ceiling price.

Appellants attempt to justify their refusal to permit appellee to buy on their floors upon two grounds: (1) That to require the warehousemen to recognize the speculator as a bona fide purchaser at maximum prices injures the producer, and disrupts the government's program in respect to sales at auction; and (2) when more than one bid is received at the maximum price, the sale no longer is an auction sale within the meaning of the Statutes hereinafter referred to, but it becomes a sale by an ordinary sale agent, who has the power to distribute the crop at his will. The Chancellor granted the injunction.

At the outset, it may be helpful to observe that the only allocation made by the government, in respect to the purchase of Burley tobacco, is in respect to the entire crop sold at auction on the floors of all warehouses for the entire year. It has no application whatever to the tobacco to be purchased at any particular time at any particular warehouse. Therefore, to permit a speculator to purchase today and resell tomorrow does not have the effect of disrupting, even to the slightest degree, the program of the government for control of the crop. Nor do we see how the producer can be injured in any wise by admitting the bid of a speculator at any particular sale. The speculator cannot become the purchaser unless he bids higher than, or equal to, his competitors; and it is conceivable that by bidding he will increase the price the producer may obtain. Although appellants introduced witnesses who concluded that permitting a speculator to participate in the bidding would be inimical to the interests of the producer, none of them substantiated his opinion with any sound reason or recitation of fact. And so we hold that the first ground urged for reversal is without foundation in law, reason, or fact.

The second defense is unique, to say the least. There is no question but that sales conducted by warehousemen are sales at auction; and the character of such sales is not changed because a limitation has been placed upon the amount a buyer may bid, or because of the fact that more than one buyer may make the same maximum bid.

The following sections of the Constitution and Statutes of Kentucky are not in conflict with any Federal law or regulation:

Kentucky Constitution, Section 206: "All elevators

or storehouses, where grain or other property is stored for a compensation, whether the property stored be kept separate or not, are declared to be public warehouses, subject to legislative control, and the General Assembly shall enact laws for the inspection of grain, tobacco and other produce, and for the protection of producers, shippers and receivers of grain, tobacco and other produce.''

KRS 248.320: ''All sales of leaf tobacco at public auction shall be free and open to all responsible bidders.''

KRS 248.320: ''No persons shall combine, by any rule, bylaw or otherwise, for the purpose of controlling, or in any way interfering with, the free and unrestricted right to bid on or purchase leaf tobacco offered for sale at public auction at any warehouse or place of sale where tobacco is sold by warehousemen for others in this state.''

KRS 248.340: ''No organization or corporation under the laws of this state shall prohibit any of its members or others from bidding on or purchasing leaf tobacco at any warehouse.''

KRS 248.350(2): ''No tobacco warehouseman selling leaf tobacco in this state shall discriminate between purchasers as to charges, samples, warranty or otherwise, whether the purchasers are members of the tobacco exchange or not.''

By refusing to permit appellee to bid for the tobacco sold on their floors, appellants have violated each and every section of the Statutes of this Commonwealth quoted above and enacted in pursuance of the authority of Section 206 of the Constitution. Nash v. Page, 80 Ky. 539, 4 Ky. Law Rep. 477, 44 Am. Rep. 490; Pannell v. Louisville Tobacco Warehouse Co., 113 Ky. 630, 68 S. W. 662, 82 S. W. 1141, 23 Ky. Law Rep. 2423. It is apparent, therefore, the Chancellor did not err in granting the injunction requiring appellants to permit appellee to bid at the sales conducted in their warehouses.

It would be a futile directive to require appellants to permit appellee to bid on tobacco, without further requiring them to accept his bid, if the highest, and allocating to him an equitable portion of the sales wherein he tied with other buyers by bidding the maximum price allowed under the regulations of the Office of Price Administration. The Chancellor directed that appellants

should allocate to appellee, if he bids therefor, not less than three baskets of tobacco sold at ceiling prices for each hour of sale in which he participates in the bidding. (On the average 360 baskets of tobacco are sold per hour.) Complaint is made that this requirement of the injunction is unfair and indefinite, because baskets vary in weight from 70 to 500 pounds each. We do not perceive the warehouseman to be affected, one way or the other, by this allocation; but if he should be, we are of the opinion the allocation is supported by the evidence. It was shown that nine-tenths of the tobacco sold at auction is purchased by the nine largest manufacturing companies. This leads to the inescapable conclusion that one-tenth of the tobacco sold at auction is purchased by independent buyers or speculators. It was shown by the evidence that eight of the manufacturers present themselves as bidders on the warehouse floors in Danville, and that five or six independent buyers or speculators attempt to join in the bidding. Assuming the eight manufacturers to be entitled to an allocation of ninety per cent of the crop, a fair distribution of the balance of the tobacco sold to each of the independent buyers or speculators would be approximately two per cent. The Court has allocated to appellee less than one per cent of the amount of tobacco to be sold in any hour in which he participates in the bidding. Certainly this allocation is more than fair to the other bidders, as well as the operators of the warehouses; and appellee has made no complaint in this respect.

The judgment is affirmed.